UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Jonathan Corbett,

*Plaintiff*

v.

Kathleen Hochul, *in her official capacity as chief executive of the State of New York,* Letitia James, *in her official capacity as Attorney General of the State of New York,* Eric Adams, *in his official capacity as Mayor of the City of New York,* Keechant Sewell, *in her official capacity as Police Commissioner of the New York Police Department,* Inspector Hugh Bogle, *in his official capacity as Commanding Officer of the New York Police Department, Licensing Division, -and-* Kevin Bruen, *in his official capacity as Superintendent of the New York State Police*

*Defendants*

---

Case No.: 22-CV-5867 (LGS) (SDA)

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE 1st, 2nd, and 14th AMENDMENTS OF THE U.S. CONSTITUTION**

## SUMMARY

1.  The people of New York have been waiting over 100 years to exercise their right to bear arms as a result of the Sullivan Act of 1911, which required individuals carrying a firearm to obtain a license and simultaneously made that license impossible for the average law-abiding citizen to get by requiring applicants to demonstrate a reason they needed a weapon <u>greater</u> <u>than</u> the average citizen.

2.  On June 23rd, 2022, the U.S. Supreme Court declared this practice unconstitutional in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022), explicitly holding that the Constitution provides an individual right to carry firearms outside of the home and that the state may not ban the ordinary, law-abiding citizen from doing so.

3.  In response, Defendant, New York Governor Kathleen Hochul (the "Governor") publicly deemed the *Bruen* holding as "outrageous," "reckless," "reprehensible," "horrific," and "appalling," and convened an extraordinary session of the state legislature wherein she

demanded the legislature pass a new law to restrict gun rights for as many New Yorkers as possible.

4.   This new law, *inter alia*, requires applicants for a gun license to disclose all social media accounts they have used within the previous 3 years, thus forcing applicants to choose between their First Amendment rights to speak and associate anonymously (and their Fourteenth Amendment right to privacy) and their Second Amendment right to keep and bear arms, and is implemented by all remaining Defendants.

5.   Plaintiff Jonathan Corbett ("Corbett"), a resident of the City of New York, has applied for a license[1] to carry a handgun within the city and state; this application is pending and a decision on his license application is subject to the new restrictions..

6.   The Court is asked to declare three specific requirements, including the social media requirement, of the new New York law to be unconstitutional and to order Defendant Hochul to cease any and all enforcement of the same.

## PARTIES

7.   Plaintiff Jonathan Corbett is a U.S. citizen with residence in Kings County, New York.

8.   Defendant Kathleen Hochul is the Governor of the State of New York and the chief executive of the laws of the state, sued here in her official capacity.

9.   Defendant Letitia James is the Attorney General of the State of New York, sued here in her official capacity.

10.   Defendant Eric Adams is the Mayor of the City of New York, sued here in his official capacity.

11.   Defendant Keechant Sewell is the Police Commissioner of the New York Police Department, sued here in her official capacity.

12.   Defendant Inspector Hugh Bogle is the Commanding Officer of the Licensing Division of the New York Police Department, sued here in his official capacity.

13.   Defendant Kevin Bruen is the Commissioner of the New York State Police, sued here in his official capacity.

---

[1] New York statutory, administrative, and decisional law vacillates between referring to a "license" and a "permit."  The terms are equivalent in this state.

## JURISDICTION & VENUE

14.   This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343 because Corbett's claims are presented exclusively under the United States Constitution.

15.   The Court is authorized to provide the relief requested under the All Writs Act, 28 U.S.C. § 1651.

16.   This district is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Corbett's license application is processed within the confines of this district and because Defendant Hochul maintains offices within this district.

## ALLEGATIONS OF FACT

17.   On April 14th, 2022, Corbett submitted an online application to the NYPD Licensing Division a permit to own, and carry on his person outside his home, a concealed weapon.

18.   Such a license is known in NYPD parlance as a "business carry" permit, despite the fact that it may be issued to individuals unrelated to a business need.

19.   There exists no other permit type by which a civilian New York City resident may carry a handgun in public, whether openly or concealed (*i.e.*, there is no "personal carry" license, nor any variety of "open carry" license, available to ordinary civilians).

20.   Corbett initially provided to the Licensing Division the following:

   a.   (1) fourteen-page application (excluding letter of necessity),

   b.   (1) letter of necessity[2],

   c.   $340.00.

21.   An officer of the licensing division promptly contacted Corbett and asked that he schedule an appointment to appear in person to provide the Licensing Division the following:

   d.   (1) New York identification card,

   e.   (1) set of fingerprints

   f.   $88.25.

22.   Corbett promptly did so.

---

[2] As a result of Bruen, this letter is likely no longer necessary.

23.     The licensing officer candidly advised Corbett that it would be about 9 months until an officer is even assigned to review his application.

24.     Upon information and belief, once the officer is assigned, Corbett will be asked to return in person to Licensing Division for an interview and to provide:

    g.   (1) notarized affidavit certifying that Corbett does not have a roommate, or consent from a roommate,

    h.   (1) notarized affidavit from someone willing to take possession of Corbett's weapons upon his death or disability,

    i.   (2) "passport-style" photos,

    j.   (1) U.S. passport,

    k.   (1) social security card,

    l.   (1) copy of Corbett's business tax return,

    m.   (1) letter from a doctor describing any mental illness Corbett has ever suffered,

    n.   Several months of bank withdrawal slips,

    o.   (1) copy of Corbett's out-of-state gun license,

    p.   (1) statement describing any handguns Corbett owns out-of-state and how they are stored,

    q.   (1) affirmation of familiarity with New York's laws regulating use of deadly force,

    r.   (1) affirmation that Corbett has never had any "orders of protection" issued against him,

    s.   Any original court records for any interaction with criminal courts whatsoever, including driving infractions (*e.g.*, "failure to wear a seatbelt" would be sufficient to require additional records),

    t.   Pictures of Corbett's business, inside and out, and

    u.   Numerous additional tax records and other records related to the businesses Corbett owns.

25.     Upon information and belief, at least two more trips to Licensing Division would be required after that: one to retrieve the license and one to register a firearm to the license.

26.     Upon information and belief, the time required to complete the above process is approximately 12-18 hours.

27.   Prior to June 23rd, 2022, New Yorkers were also required to demonstrate "proper cause" for the issuance of a carry gun license.

28.   That is, they were required to demonstrate that they had a greater need to carry a firearm than that of the average citizen, for example, due to extensive history of threats to the applicant's person, due to a dangerous job, etc.; former police officers were exempted from this requirement.

29.   On June 23rd, 2022, the U.S. Supreme Court declared New York's proper cause requirement to be unconstitutional. *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. ___ (2022).

30.   The *Bruen* court explicitly held that the Constitution affords an individual right to bear arms outside of the home and that a law that prohibits the ordinary, law-abiding citizen from doing so violates that right.

31.   Within hours after the *Bruen* decision was announced, the Governor publicly deemed the *Bruen* holding as "outrageous," "reckless," "reprehensible," "horrific," and "appalling" on her official Twitter account and made similar statements to the media.

32.   Within days after the *Bruen* decision was announced, the Governor convened an extraordinary session of the state legislature.

33.   The purpose of this session was to pass a new law to prevent as many New Yorkers as possible from obtaining a license to carry handguns.

34.   The legislature passed Senate Bill S51001, which modifies New York Penal Law § 400.

35.   The changes affect the requirements for licensure and the privileges of licensees.

36.   The provisions of both sections are clearly designed to make licensure as difficult as possible while making the privileges of the license as useless as possible.

37.   However, this lawsuit addresses only changes made by S51001 that affect the requirements for licensure and does not seek review of any changes made by S51001 that affect the privileges of licensees – including the constitutionally-dubious designation of entire neighborhoods and modes of transportation as "sensitive locations" where gun licenses are not valid – as Corbett is not yet a licensee.

38.   Corbett challenges three particular provisions of S51001 that affect the requirements for licensure.

39.   All three of the challenged provisions are phrased in mandatory language; that is, a licensing officer is not given discretion to waive them.

40.   **First**, S51001 amends § 400.00(1) to add a subsection (o) that requires applicants to provide "a list of former and current social media accounts of the applicant from the past three years to confirm the information regarding the applicants character and conduct" (hereafter, the "Social Media Requirement").

41.   Effectively, this ends the right to speak anonymously on the Internet for anyone who would also like to use their Second Amendment rights.

42.   An applicant who has had an abortion and has used the anonymity of social media to seek comfort is now outed, as is the gay person struggling to come out to their family.  An applicant with an "Only Fans" who sells nude pictures of themselves online would now be required to let police officers take a look at their body.  The person who uses social media to document police misconduct, too, must de-anonymize themselves, as is the supporter of Black Lives Matter or any other marginalized political group.

43.   Of course, the law does nothing to stop would-be mass shooters from getting a license, as they would simply omit any telling social media accounts from their application: of course the license investigation may find this social media account and disqualify the application, but the investigator could already do this without the new law, and thus only honest, law-abiding applicants stand to be harmed here.

44.   **Second**, S51001 also adds to subsection (o) a requirement of "names and contact information of no less than four character references who can attest to the applicant's good moral character" (hereafter, the "References Requirement").

45.   Our Constitutional rights are not contingent on whether we can find four friends to vouch for us, and this is precisely the spirit of "proper cause" – whereby the government decided if an applicant had a good enough reason or not – that was struck down in *Bruen*.

46.   **Third**, S51001 adds subsection 19 to § 400.00(1), which requires an applicant to complete 18 hours of training: 16 hours of "in-person live curriculum" and 2 hours of "live-fire range training" (hereafter, the "Training Requirement").

47.   Upon belief, the requirements other than those added by S51001 already required 12-18 hours of time to complete; this would bring the total to 30-36 hours, plus the commute required to attend this "in-person"-only course would make that 31-38 hours.

48.     The filing and fingerprint fees were already $428.25.  Upon information and belief, based on training courses required in other states, this will add $400-600 in course fees, plus the cost of the four in-person trips to licensing division and one in-person trip to the course.

49.     Assuming $500 for the course fee and $20 each way for each commute, and not considering the cost of taking time off of work, the cost of obtaining a gun license in New York (valid for 3 years) is now ***$1,128.50***.

50.     Minimum wage in this state is now $15 and a minimum wage earner in the Bronx working 40 hours per week, filing as single with no dependents but themselves, will take home about 76% of their check after taxes.

51.     Using those numbers, this minimum wage worker must work for 99 hours just to pay for a license.

52.     In other words, for this worker to take the time to apply for, finish the training for, and work at their job to pay the application fee for, a gun license in New York, it will take them up to <u>135 hours of their life</u>, if they are even allowed by their employer to take the time off from work necessary to complete the process.

53.     Upon information and belief, no other state in the country requires 18 hours of training to get a gun license.

54.     Upon information and belief, it does not take 18 hours to teach the information that a state may rationally wish to impart upon a licensee.

55.     Upon information and belief, this requirement was intended to, and does, make the obtaining of a license impracticable or impossible for the average citizen.

56.     Defendant James is responsible for enforcing the laws of the State of New York and she decides the state's interpretation of the law, including the 3 parts of the law challenged here.

57.     On August 23rd, 2022, Defendant Keechant Sewell drafted a letter, which was approved by Eric Adams, issued "emergency rules" regarding concealed carry licenses that implement (partially or fully) the 3 parts of the law challenged here.

58.     Defendant Hugh Bogle is responsible for running the New York Police Department's Licensing Division and he is required by law to ensure that the 3 parts of the law challenged here are enforced as to Plaintiff's application.

59.     Defendant Kevin Bruen is tasked by law with implementing the training requirements set
        complained of in this lawsuit, including approving any training programs that will qualify
        a license applicant, such as Plaintiff, to receive a license.


## CLAIMS FOR RELIEF

### Counts 1 – 3: Violation of First*, Second*, and Fourteenth Amendments to U.S. Constitution under 42 U.S.C. § 1983 (*Against All Defendants Except Bruen*)
*As Incorporated Against the States by the Fourteenth Amendment*
*(Social Media Requirement)*

60.     Corbett has the right to speak and associate with others anonymously.

61.     Corbett also has the right to keep and bear arms.

62.     The Social Media Requirement precludes Corbett from exercising both rights
        simultaneously, constitutes an invasion of his privacy, and generates a substantial risk of
        discriminatory enforcement.

63.     The Social Media Requirement is thus unconstitutional under the First (Count 1) and
        Second (Count 2) Amendments to the U.S. Constitution, as incorporated against the
        states by the Fourteenth Amendment, and the due process clause of the Fourteenth
        Amendment (Count 3), to the extent the Constitution still provides a right to privacy post-
        *Dobbs*[3], and enforcement of the Social Media Requirement against Corbett violates his
        rights.

---

[3] *Dobbs v. Jackson Women's Health*, 597 U. S. _____ (2022), certainly restricted the scope of rights that are not explicitly mentioned in the Constitution, but the court appears to have left open the door to a right to privacy insofar as it means a "right to shield information from disclosure." *Id*. at *48, *49.

**Count 4: Violation of Second\* Amendment to U.S. Constitution under 42 U.S.C. § 1983**

**(_Against All Defendants Except Bruen_)**

***\*As Incorporated Against the States by the Fourteenth Amendment***

***(References Requirement)***

64.    Corbett has the right to keep and bear arms.

65.    His exercise of this right is not contingent on the approval of four other people.

66.    The References Requirement is thus unconstitutional under the Second Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment, and enforcement of the References Requirement against Corbett violates his rights.


**Count 5: Violation of Second\* Amendment to U.S. Constitution under 42 U.S.C. § 1983**

**(_Against All Defendants_)**

***\*As Incorporated Against the States by the Fourteenth Amendment***

***(Training Requirement)***

67.    Corbett has the right to keep and bear arms.

68.    A law that unnecessarily, intentionally, and unreasonably restricts his ability to do so, as the Training Requirement, in light of the other requirements for a New York gun license, does, is unconstitutional.

69.    The Training Requirement is thus unconstitutional under the Second Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment, and enforcement of the Training Requirement against Corbett violates his rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

i. Declaratory relief stating that each of the provisions complained of – the Social Media Requirement, the References Requirement, and the Training Requirement – are facially unconstitutional.

ii. Injunctive relief, a writ of *mandamus*, a writ of prohibition, or other extraordinary writ to give effect to the declaratory relief.

iii. Nominal damages in the amount of one dollar from each defendant.

iv. Cost of the action.

v. Reasonable attorney's fees, to the extent that the law allows an attorney representing himself to collect attorney's fees, and/or in the event Corbett retains an attorney at a later point in this matter.

vi. Any other such relief as the Court deems appropriate.

Dated: New York, New York                    Respectfully submitted,

   September 13th, 2022                          */s/Jonathan Corbett*

_____

Jonathan Corbett, Esq. (CA Bar #325608)
Plaintiff (Attorney Proceeding *Pro Se*)
CORBETT RIGHTS, P.C.
958 N. Western Ave. #765
Hollywood, CA 90029
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX:   (310) 675-7080