22 CV 5867 (LGS)(SDA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Jonathan Corbett,

*Plaintiff*

- against -

Kathleen Hochul, *in her official capacity as chief executive of the State of New York*, Letitia James, *in her official capacity as Attorney General of the State of New York*, Eric Adams, *in his official capacity as Mayor of the City of New York*, Keechant Sewell, *in her official capacity as Police Commissioner of the New York Police Department*, Inspector Hugh Bogle, *in his official capacity as Commanding Officer of the New York Police Department, Licensing Division*, -and- Kevin Bruen, *in his official capacity as Superintendent of the New York State Police*

*Defendants*

## CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

*SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Nicholas R. Ciappetta*
*Tel:  (212) 356-4036*

MICHELLE GOLDBERG-CAHN,
NICHOLAS R. CIAPPETTA,
Of Counsel.

October 21, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………..…………………………………………………ii

PRELIMINARY STATEMENT……………………………………………..…………………...1

ARGUMENT
    PLAINTIFF IS NOT ENTITLED TO THE EXTRAORDINARY AND DRASTIC
    REMEDY OF A PRELIMINARY INJUNCTION ...................................................................3

POINT I
    PLAINTIFF CANNOT DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF
    SUCCESS ON THE MERITS........................................................................................................5
        A.  Plaintiff Lacks Standing to Challenge the References Requirement, Social Media
            Requirement, or the Training Requirement...........................................................................5
        1.  References Requirement and Social Media Requirement. ..........................................5
        2.  Training Requirement.................................................................................................6
        3.  Conclusion………………………………………………………………..………9
        B.  The Training Requirement Does Not Violate the Second Amendment........................9

POINT II
    PLAINTIFF WOULD NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A
    PRELIMINARY INJUNCTION .......................................................................................14

POINT III
    AN INJUNCTION IS NOT IN THE PUBLIC INTEREST ..................................................15

CONCLUSION………………………………………………………………………..………17

## TABLE OF AUTHORITIES

Page(s)

**Cases**

DaimlerChrysler Corp. v. Cuno,
  547 U.S. 332 (2006)........................................................................................................5

District of Columbia v. Heller,
  554 U.S. 570 (2008)................................................................................................*passim*

Gill v. Whitford,
  138 S. Ct. 1916 (2018).....................................................................................................5

Hedges v. Obama,
  724 F.3d 170 (2d Cir. 2013) ...........................................................................................5

Jolly v. Coughlin,
  76 F.3d 468 (1996) ........................................................................................................14

Kamerling v. Massanari,
  295 F.3d 206 (2d Cir. 2002) ..........................................................................................14

Libertarian Party v. Cuomo,
  300 F. Supp. 3d 424 (W.D.N.Y. 2018), aff'd, 970 F.3d 106 (2d Cir. 2020) .........7, 8

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992)..........................................................................................................5

Moore v. Consol. Edison Co.,
  409 F.3d 506 (2d Cir. 2005) ...........................................................................................3

Munaf v. Geren,
  553 U.S. 674 (2008)..........................................................................................................3

New York State Rifle & Pistol Ass'n, Inc. v. Bruen,
  142 S. Ct. 2111 (2022)..............................................................................................*passim*

New York v. Actavis PLC,
  787 F.3d 638 (2d Cir. 2015) ...........................................................................................4

North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,
  883 F.3d 32 (2d Cir. 2018) ............................................................................................4

Oneida Nation of N.Y. v. Cuomo,
  645 F.3d 154 (2d Cir. 2011) ...........................................................................................4

Parker v. District of Columbia,
    478 F.3d 370 (D.C. Cir. 2007), aff'd sub nom., District of Columbia v. Heller,
    554 U.S. 570 (2008)...............................................................................................................7

Plaza Health Labs., Inc. v. Perales,
    878 F.2d 577 (2d Cir. 1989) ..................................................................................................4

Polymer Tech. Corp. v. Mimran,
    37 F.3d 74 (2d Cir. 1994) .......................................................................................................3

Rodriguez ex rel. Rodriguez v. DeBuono,
    175 F.3d 227 (1998) ..............................................................................................................14

**Statutes**

ALASKA STAT. § 18.65.715 (2022) ...........................................................................................10

ARIZ. REV. STAT. § 13-3112(N) (LexisNexis 2022)...................................................................10

ARK. CODE ANN. 5-73-309(13) (2022) ......................................................................................10

CAL. PENAL CODE § 26165 (Deering 2022) ...............................................................................10

COLO. REV. STAT. § 18-12-203(1)(h) (2022) .............................................................................10

CONN. GEN. STAT. § 29-28(b) (2022) ........................................................................................10

D.C. CODE § 7-2509.03 (b)(1)(A) (2022) ..................................................................................11

DEL. CODE ANN. tit. 11, § 1441(a)(3) ........................................................................................10

FLA. STAT. ANN. § 790.06(2)(h) (LexisNexis 2022) .................................................................11

HAW. REV. STAT. ANN. § 134-2(g) (LexisNexis 2022) .............................................................11

ILL. COMP. STAT. 66/75(b)..........................................................................................................11

IOWA CODE § 724.9 (2022)..........................................................................................................11

KAN. STAT. ANN. § 75-7c04 (2022)............................................................................................11

KY. REV. STAT. ANN. 237.110(4)(i) (LexisNexis 2022)............................................................11

LA. REV. STAT. § 40:1379.3(D) (2022) .....................................................................................11

MASS. ANN. LAWS ch. 140, § 131(P)(a) (LexisNexis 2022) ...................................................11

MD. CODE ANN., PUB. SAFETY § 5-306(a)(5) (LexisNexis 2022) ...............................................11

Me. Rev. Stat. Ann. tit. 25, § 2003(1)(E)(5) (2022) ...................................................11

Mich. Comp. Laws Serv. § 28.425b(7)(c) (LexisNexis 2022) ...................................11

Minn. Stat. § 624.714, Subd. 2a (2022) .....................................................................11

Mo. Rev. Stat. § 571.111 (2022) ................................................................................11

Mont. Code Ann. § 45-8-321(3) (2021) ......................................................................11

N.C. Gen. Stat. § 14-415.2(a)(4) (2022)......................................................................11

N.D. Cent. Code § 62.1-04-03(1)(d) (2021) ...............................................................11

N.M. Stat. Ann. § 29-19-7 (LexisNexis 2022) ...........................................................11

2022 N.Y. Laws § 1 Ch. 371 .....................................................................................6, 7

N.Y. Penal Law § 400.00(1)(o)(ii),(iv)........................................................................6

Neb. Rev. Stat. § 69-2432 (LexisNexis 2022) ............................................................11

Nev. Rev. Stat. Ann. § 202.3657(3)(c) (LexisNexis 2021) ........................................11

New York Penal Law § 400.00(1)(o)(ii) and (iv)..........................................................1

Ohio Rev. Code Ann. § 2923.125(B) (LexisNexis 2022)...........................................11

Okla. Stat. Ann. tit. 21, § 1290.12(A)(2) (2022) ........................................................11

Or. Rev. Stat. § 166.91(1)(f) (2022) ...........................................................................11

Penal Law § 400.00 ..................................................................................................1, 6

Penal Law § 400.00(1)..................................................................................................1

Penal Law § 400.00(1)(b) ...........................................................................................16

Penal Law § 400.00(1)(o)..............................................................................................1

Penal Law § 400.00(1)(o)(ii)........................................................................................2

Penal Law § 400.00(1)(o)(iv) .......................................................................................2

Penal Law § 400.00(2)(f)...............................................................................................1

Penal Law § 400.00(19)..........................................................................................passim

R.I. Gen. Laws § 11-47-15 (2022)..............................................................................11

S.C. CODE ANN. § 23-31-215(A)(5) (2022) .................................................................11

TENN. CODE ANN. § 39-17-1366(b)(4) (2022) ...........................................................11

TEX. GOV'T CODE ANN. § 411.174(a)(7) (2021) .........................................................11

UTAH CODE ANN. § 53-5-704(8) (LexisNexis 2022) ..................................................11

VA. CODE ANN. § 18.2-308.02(B) (2022)....................................................................11

W. VA. CODE ANN. § 61-7-4(e) (LexisNexis 2022) ....................................................11

WIS. STAT. § 175.60(4)(a) (2022) ...............................................................................11

WYO. STAT. ANN. § 6-8-104(b)(vii) (2022)..................................................................11

**Other Authorities**

Peter Suciu, *Social Media Increasingly Linked with Mass Shootings*, FORBES
(May 25, 2022, 12:11 p.m),
https://www.forbes.com/sites/petersuciu/2022/05/25/social-media-
increasingly-linked-with-mass-shootings/?sh=7d8f778b3c73 ................................16

N.J. ADMIN. CODE § 13:54-2.4(b) (2022) ...................................................................11

Amanda Seitz, *Shooter Warnings Get Lost in Sea of Social Media Posts*, AP
NEWS (May 27, 2022), https://apnews.com/article/uvalde-school-shooting-
technology-shootings-social-media-texas-
b8dc7a615765e17d46313bc83e2fe452 ...................................................................16

**PRELIMINARY STATEMENT**

Plaintiff Jonathan Corbett seeks the extraordinary and drastic remedy of a preliminary injunction to enjoin Defendants, including Eric Adams, Mayor of the City of New York, Keechant Sewell, Commissioner of the New York City Police Department ("NYPD"), and Deputy Inspector Hugh Bogle, Commanding Officer of the NYPD Licensing Division[1], from enforcing New York Penal Law ("Penal Law") § 400.00(1)(o)(ii) and (iv) and Penal Law § 400.00(19) (collectively referred to hereinafter as "the Challenged Provisions"), which became effective over one month ago on September 1, 2022.

The Challenged Provisions are part of the comprehensive law known as the Concealed Carry Improvement Act ("CCIA") (S.51001/A.41001) that was enacted on July 1, 2022, during an extraordinary session of the New York State Legislature.  The extraordinary session was called by New York State Governor Kathy Hochul to amend the State's firearm licensing laws following the United States Supreme Court's decision on June 23, 2022, in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), which struck down the State's requirement that an applicant seeking a license to publicly carry a firearm outside of the home or place of business must demonstrate "proper cause" to the applicable licensing official. In accord with Bruen, the CCIA eliminated the "proper cause" standard from Penal Law § 400.00 and added a number of other "narrow, objective, and definite standards" (Bruen, 142 S. Ct. at 2138, n.9) to guide licensing officials, ensure the safe use of concealed firearms, and promote public safety.

Penal Law § 400.00(1) sets forth eligibility requirements for the licensing of firearms, including licenses issued under Penal Law § 400.00(2)(f) to carry concealed.  Penal

---

[1] Hereinafter, Mayor Adams, NYPD Commissioner Sewell, and Deputy Inspector Bogle will be collectively referred to as the "City Defendants."

Law § 400.00(1)(o) sets forth additional requirements applicable solely to carry licenses.  Penal Law § 400.00(1)(o)(ii) requires an applicant for a carry license to submit the "names and contact information of no less than four character references who can attest to the applicant's good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or other." ("References Requirement").  Penal Law § 400.00(1)(o)(iv) further requires an applicant for a concealed carry license to provide "a list of former and current social media accounts of the applicant from the past three years to confirm the information regarding the applicants character and conduct as required in subparagraph (ii) of this paragraph."  ("Social Media Requirement"). Penal Law § 400.00(19) adds an in-person live firearms safety course requirement consisting of (a) a minimum of sixteen hours of in-person live curriculum on specified topics listed therein and (b) a minimum of two hours of a live-fire range training course.  ("Training Requirement").

Corbett has a pending application with the NYPD Licensing Division that was submitted prior to the Supreme Court's decision in Bruen.  In this action, he contests the facial constitutionality of the Challenged Provisions.  Specifically, he alleges that the Social Media Requirement is violative of the First, Second, and Fourteenth Amendments to the United States Constitution.  With respect to the References Requirement and Training Requirement, he rests his challenge solely on the Second Amendment.  Corbett's facial challenge faces a serious and outcome determinative justiciability hurdle – namely, he cannot establish standing to sue because he has not suffered an injury-in-fact.  By the clear terms of the CCIA, the Social Media Requirement and References Requirement are not applicable to Corbett's application.  While the Training Requirement does apply to Corbett, it is entirely hypothetical at this point in time whether that requirement will produce an injury.  In any event, the Training Requirement is a

narrow, objective requirement that finds strong support in the text of the Second Amendment and the Bruen decision.  While regulation of the use and possession of firearms is one of the most divisive political issues of our time, it cannot be seriously argued that firearms remain dangerous instruments and gun violence remains a grave societal problem.  And despite the evolving nature of Second Amendment jurisprudence, the Supreme Court confirmed in Bruen that the Second Amendment does not render municipalities powerless to address these issues.  In fact, it is hard to think of a firearm regulation that is more benign or more effective in reducing accidental injuries and deaths than a requirement that firearm owners actually understand how to operate their weapons.

For these reasons, and the others that follow in this memorandum of law, the City Defendants request that the court deny Plaintiff's motion for a preliminary injunction.

## ARGUMENT

### PLAINTIFF IS NOT ENTITLED TO THE EXTRAORDINARY AND DRASTIC REMEDY OF A PRELIMINARY INJUNCTION

There are different formulations of the standard for a preliminary injunction depending on the nature of the relief sought and against whom the relief is sought.  Under any formulation, the issuance of a preliminary injunction is considered a drastic and extraordinary remedy, see Moore v. Consol. Edison Co., 409 F.3d 506, 510 (2d Cir. 2005), and "never awarded as of right."  Munaf v. Geren, 553 U.S. 674, 689-90 (2008).

To obtain preliminary injunctive relief in a federal case, a plaintiff must generally establish (a) irreparable harm; and (b) "either (1) a likelihood of success on the merits of its case, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly" in its favor.  See e.g., Polymer Tech. Corp. v. Mimran, 37 F.3d 74, 77-78 (2d Cir. 1994).  Additionally, the moving party is required to show

that the preliminary injunction is in the public interest.  See Oneida Nation of N.Y. v. Cuomo, 645 F.3d 154, 164 (2d Cir. 2011).   But where, as here, "the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," a preliminary injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard.  Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989).  Further, if the preliminary injunction is mandatory, rather than prohibitory, in nature, a heightened standard is applied and the movant must make a "clear" or "substantial" showing of likelihood of success on the merits and a "strong" showing of irreparable harm, in addition to the public interest element.  See New York v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015).

As stated above, the CCIA, including the Challenged Provisions, became effective on September 1, 2022, and, as such, it is presently the law of New York State. Plaintiff's motion now seeks to enjoin an operative law.  An injunction that seeks to alter the status quo is considered mandatory in nature.  See North Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 36 (2d Cir. 2018).  As Plaintiff seeks to prevent the continued enforcement of three provisions that took effect weeks ago, the court should treat this request as a motion for a mandatory injunction.

Accordingly, the relevant standard for this case is as follows:  Plaintiff must demonstrate a "clear" or "substantial" likelihood of success on the merits and a "strong" showing of irreparable harm, in addition to showing that the preliminary injunction is in the public interest.[2]

---

[2] Even if the court deems Plaintiff's motion as seeking a prohibitory, rather than mandatory, injunction, he cannot satisfy the non-heightened standard.

## POINT I

### PLAINTIFF CANNOT DEMONSTRATE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

**A.   Plaintiff Lacks Standing to Challenge the References Requirement, Social Media Requirement, or the Training Requirement**

Article III of the United States Constitution serves as a gatekeeper to invoking the jurisdiction of the federal courts. See Hedges v. Obama, 724 F.3d 170, 188 (2d Cir. 2013). The doctrine of standing demonstrates that a plaintiff has a personal stake in the outcome of the litigation. This ensures that federal courts hear real controversies, and not generalized grievances about government. See Gill v. Whitford, 138 S. Ct. 1916, 1929 (2018). To establish standing, a plaintiff must prove three elements. "First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). Additionally, a plaintiff bears the burden of demonstrating standing for each claim asserted. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).

**1.   References Requirement and Social Media Requirement**

On or about April 14, 2022, Plaintiff submitted a new application to the NYPD License Division for a Carry Business Handgun License. See Exhibit 1 to the Declaration of

Nicholas R. Ciappetta ("Ciappetta Declaration")[3].  Section 1 of the CCIA amends the eligibility requirements set forth in subdivision 1 of Penal Law § 400.00 to include, among other things, the References Requirement and Social Media Requirement for applications for a concealed carry license.  See Ch. 371, 2022 N.Y. Laws § 1 (codified at N.Y. Penal Law § 400.00(1)(o)(ii),(iv)).  Section 26 of the CCIA provides that the effective date of the act is September 1, 2022, subject to certain exceptions separately listed immediately thereafter.  See id. at § 26.  Relevant herein, Section 26(a) of the CCIA states that "the amendments to subdivision 1 … of section 400.00 of the penal law made by section one of this act shall apply only to licenses for which an application is made on or after the effective date of this act."  Id. at § 26(a) (emphasis added).  Since Corbett's application was made months before the effective date of the CCIA, the amendments to subdivision 1 of Penal Law § 400.00, which include both the References Requirement and Social Media Requirement, clearly do not apply to his application.  As such, Corbett does not need to provide four character references or current and former social media accounts from the past three years to the NYPD License Division.  Corbett cannot suffer an injury in fact from information that he is not required to provide in connection with his pending application and all claims related to the References Requirement and Social Media Requirement fail without the need for further analysis.[4]

### 2.  Training Requirement

Section 23 of the CCIA adds a new subdivision 19 to Penal Law § 400.00 that requires, among other things, a minimum of sixteen hours of in-person live curriculum and a

---

[3] All exhibits referenced herein are annexed to the Ciappetta Declaration.

[4] While the References Requirement and Social Media Requirement do apply to renewal applications, Plaintiff cannot assert standing based on an event three years into the future that is dependent upon the approval of his initial application.  Such harm is entirely hypothetical and certainly not imminent.

minimum of two hours of a live-fire range training course *prior* to the *issuance* or renewal of a concealed carry license. See Ch. 371, 2022 N.Y. Laws § 19 (codified at N.Y. Penal Law § 400.00(19)). The Training Requirement, therefore, must be satisfied in order for Corbett to receive his license, in the event his application is otherwise approved. This fact, without more, however, does not satisfy the Article III standing requirements.

Plaintiff appears to argue that his pending application will inevitably be denied because he refuses to satisfy the Training Requirement. While Plaintiff has applied for a firearms license from the NYPD, case law holds that it is an adverse licensing determination that is necessary to give rise to Article III injury. See Parker v. District of Columbia, 478 F.3d 370, 376 (D.C. Cir. 2007), aff'd sub nom., District of Columbia v. Heller, 554 U.S. 570 (2008); see also Libertarian Party v. Cuomo, 300 F. Supp. 3d 424, 434 (W.D.N.Y. 2018) ("courts have only found standing where the individual applied for a license *and was denied"*) (emphasis added), aff'd, 970 F.3d 106, 116 (2d Cir. 2020) ("In order to challenge the New York firearm licensing laws, a person must either have applied for *and been denied a license*….") (emphasis added). Likewise, the plaintiffs in Bruen were denied in their efforts to obtain unrestricted carry licenses, thus establishing standing to challenge the State's "proper cause" requirement. See Bruen, 142 S. Ct. at 2125.

By his own admission, Plaintiff has not received *any* determination on his license application. See Plaintiff's Renewed Motion for a Preliminary Injunction with Incorporated Memorandum ("Plaintiff's Memo") at 6. This is insufficient to establish standing under the framework set forth in the above paragraph. While the Second Circuit has carved out an exception where the plaintiff alleges that an application would be futile, see Libertarian Party, 970 F.3d at 116, Corbett does not allege futility. Rather, he simply states that he does not

"intend to waste another 18 hours of [his] life taking New York training courses." Affidavit of Jonathan Corbett in Support of Renewed Motion for Preliminary Injunction ¶ 12. "Mere objection or antipathy to the law does not constitute a showing of futility." Libertarian Party, 970 F.3d at 116.

Not only is Plaintiff's application not futile, there is a possibility that a complete review by the NYPD License Division will result in the approval of his application notwithstanding his refusal to take the in-person live curriculum and minimum of two hours of live-fire range training. Corbett's application provides that he is licensed by the State of Florida to carry a handgun since 2009 and that since approval of that license he has "regularly visited handgun ranges...." Exhibit 1 at page 10. Since the passage of the CCIA, the New York State Division of Criminal Justice Services issued written guidance on the requirements now codified at Penal Law § 400.00(19). One document, entitled "Minimum Standards for New York State Concealed Carry Firearm Safety Training," states that for applicants "who have completed a firearm safety training course within the five years preceding September 1, 2022, the respective licensing officer may give credit for such prior training to satisfy some or all of the training requirements set forth in New York Penal Law § 400.00(19), as the licensing officer deems appropriate." Exhibit 2 at page 1. Similarly, a document answering frequently asked questions about the new licensing requirements provides that "Local licensing officers have the discretion to determine whether a portion or all of the firearms training requirement is satisfied for those applicants who completed a firearm safety course in the previous 5 years." Exhibit 3 at page 4. The NYPD will need to follow-up on the statements contained in Corbett's application to determine if he can receive credit for prior training.

### 3. Conclusion

For all these reasons, it is hard to think of a case in which the plaintiff's standing argument is weaker than that presented herein. The References Requirement and Social Media Requirement do not apply to an application like Corbett's that was submitted prior to September 1, 2022. With respect to the Training Requirement, not only is Plaintiff not presently injured, there is a possibility that he may never be injured by such requirement. Plaintiff's alleged speculative harm cannot invoke this court's jurisdiction and there is no need for the court to explore the merits of his claims or grant the drastic relief of a preliminary injunction.

**B.     The Training Requirement Does Not Violate the Second Amendment[5]**

In Bruen, the Supreme Court continued the development of modern Second Amendment jurisprudence by declaring that there is a constitutional right to carry a firearm in public for purposes of self-defense. See Bruen, 142 S. Ct. at 2156. The Court also dispensed with the two-part means-end scrutiny (whether intermediate or strict scrutiny) applied by many of the federal circuits, and clarified that the Second Amendment "demands a test rooted in the Second Amendment's text, as informed by history." Id. at 2127. The new test formulated by the Court is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." Id. at 2129-30 (internal quotation marks and citations omitted). For purposes of analyzing the "Nation's historical tradition of firearm regulation," the

---

[5] This memo does not address the merits of Plaintiff's challenge to the References Requirement or the Social Media Requirement because, as stated above, Corbett is not required to provide that information in connection with his pending application.

Court advised that the relevant time periods are the ratification of the Second Amendment and Fourteenth Amendment.  See id. at 2111.

Notwithstanding this sea change, the Second Amendment is not an unlimited right and it is not a right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  Id. at 2128 (quoting Heller, 554 U.S. at 626).  Indeed, the Constitution leaves a "variety of tools" to address the problem of gun violence.  See Heller, 554 U.S. at 636. In fact, Heller and Bruen identified a sample of "longstanding," "presumptively lawful regulatory measures."  Heller, 554 U.S. at 626-27, n.26, Bruen, 142 S. Ct. at 2133-34, 2138 n.9, 2150, 2162 (Kavanaugh, J., concurring).  Further, the Court stated that the regulatory measures identified were not meant to be an exhaustive list.  See Bruen, 142 S. Ct. at 2162.

Included in the above list, and relevant to the instant matter, are "narrow, objective and definite standards."  Bruen, 142 S. Ct. at 2138 n.9.  The Court spoke approvingly of such criteria because they do not involve the exercise of judgment.  See id.  In that same portion of the decision, the Supreme Court made clear that it was not questioning the constitutionality of "shall-issue" licensing states, which often require applicants to "pass a firearms safety course."  Id.  The totality of this portion of the Bruen decision establishes that training requirements, such as those added by the CCIA, are presumptively lawful without the need to comb through history from the time periods around the ratification of the Second and Fourteenth Amendments.  The Supreme Court's ostensible acceptance of firearm safety training as presumptively lawful is logical given that the overwhelming number of states require an applicant to demonstrate competence in the use of a firearm in order to carry concealed.[6]  Indeed,

---

[6] See ALASKA STAT. § 18.65.715 (2022); ARIZ. REV. STAT. § 13-3112(N) (LexisNexis 2022); ARK. CODE ANN. 5-73-309(13) (2022); CAL. PENAL CODE § 26165 (Deering 2022); COLO. REV. STAT. § 18-12-203(1)(h) (2022); CONN. GEN. STAT. § 29-28(b) (2022); DEL. CODE ANN. tit. 11,

such restrictions enhance, rather than burden, Second Amendment rights because one cannot truly experience the benefits of gun ownership if unable to safely operate the firearm.

The Training Requirement adds sixteen hours of in-person classes and a live training component of two hours, plus demonstrated proficiency in both aspects of the course as evidenced by the issuance of a certificate of completion.  See Penal Law § 400.00(19).  The topics to be covered in the curriculum – general firearm safety; safe storage requirements; conflict de-escalation; a review of state and federal gun laws, including the list of "sensitive places" in New York; etc. – are highly germane to responsible firearm use and ownership.  See id.  Likewise, the two hours of live firearm training hardly seems onerous.  A firearm remains a deadly instrument, whether used for its intended purpose or negligently.  Requiring that a gun owner know how to operate the weapon and best practices for avoiding conflicts and accidents is simply a matter of common sense.  Indeed, the State's training course pales in comparison to the requirements imposed to receive a license to drive a motor vehicle.  Lastly, it cannot be argued that Penal Law § 400.00(19) is not an objective requirement as the licensing officer must simply

---

§ 1441(a)(3); Fla. Stat. Ann. § 790.06(2)(h) (LexisNexis 2022); Haw. Rev. Stat. Ann. § 134-2(g) (LexisNexis 2022); 430 Ill. Comp. Stat. 66/75(b); Iowa Code § 724.9 (2022); Kan. Stat. Ann. § 75-7c04 (2022); Ky. Rev. Stat. Ann. 237.110(4)(i) (LexisNexis 2022); La. Rev. Stat. § 40:1379.3(D) (2022); Me. Rev. Stat. Ann. tit. 25, § 2003(1)(E)(5) (2022); Md. Code Ann., Pub. Safety § 5-306(a)(5) (LexisNexis 2022); Mass. Ann. Laws ch. 140, § 131(P)(a) (LexisNexis 2022); Mich. Comp. Laws Serv. § 28.425b(7)(c) (LexisNexis 2022); Minn. Stat. § 624.714, Subd. 2a (2022); Mo. Rev. Stat. § 571.111 (2022); Mont. Code Ann. § 45-8-321(3) (2021); Neb. Rev. Stat. § 69-2432 (LexisNexis 2022); Nev. Rev. Stat. Ann. § 202.3657(3)(c) (LexisNexis 2021); N.J. Admin. Code § 13:54-2.4(b) (2022); N.M. Stat. Ann. § 29-19-7 (LexisNexis 2022); N.C. Gen. Stat. § 14-415.2(a)(4) (2022); N.D. Cent. Code § 62.1-04-03(1)(d) (2021); Ohio Rev. Code Ann. § 2923.125(B) (LexisNexis 2022); Okla. Stat. Ann. tit. 21, § 1290.12(A)(2) (2022); Or. Rev. Stat. § 166.91(1)(f) (2022); 11 R.I. Gen. Laws § 11-47-15 (2022); S.C. Code Ann. § 23-31-215(A)(5) (2022); Tenn. Code Ann. § 39-17-1366(b)(4) (2022); Tex. Gov't Code Ann. § 411.174(a)(7) (2021); Utah Code Ann. § 53-5-704(8) (LexisNexis 2022); Va. Code Ann. § 18.2-308.02(B) (2022); D.C. Code § 7-2509.03 (b)(1)(A) (2022); W. Va. Code Ann. § 61-7-4(e) (LexisNexis 2022); Wis. Stat. § 175.60(4)(a) (2022); Wyo. Stat. Ann. § 6-8-104(b)(vii) (2022).

check whether the firearm license applicant included a certificate of completion; there is no discretion bestowed upon the official.

For all these reasons, the City Defendants maintain that <u>Bruen</u> does not mandate that a municipality support a firearms safety course requirement with evidence that such course "is consistent with the Nation's historical tradition of firearm regulation."

Plaintiff's Second Amendment claim as to the Training Requirement fails for an additional, independent reason.  Quite simply, Plaintiff failed to follow the one of the most important commands of <u>Bruen</u> – start with the text.  Corbett has not analyzed the words of the Second Amendment to show that the plain text covers his proposed conduct.  Instead, he skips right to the second step and contends that none of the Challenged Provisions are consistent with the "Nation's historical tradition of firearm regulation." <u>See</u> Plaintiff's Memo at 7.  But before Plaintiff can argue that the government cannot meet its burden, he must first satisfy his own burden.  Corbett's failure to define the proposed course of conduct and review the text of the Second Amendment to establish that such conduct is presumptively protected is fatal to his Second Amendment claim.[7]

Lastly, even assuming that Plaintiff could formulate a course of conduct with support in the text of the Second Amendment, the State can easily clear the hurdle of the second part of the <u>Bruen</u> test.  Indeed, the text of the Second Amendment itself establishes that training requirements comport with the "Nation's historical tradition of firearm regulation."  In <u>Heller</u>,

---

[7] The Supreme Court in <u>Bruen</u> did not provide guidance on how to define the proposed course of conduct – perhaps because the conduct therein was relatively straightforward (carrying handguns in public for self-defense) and the textual analysis was not complex.  City Defendants submit that Plaintiff's proposed course of conduct, at least with respect to the Training Requirement, is as follows:  owning or possessing a firearm without training in the operation or storage of a firearm. It is the City Defendants' contention that Plaintiff ignored the first step in the <u>Bruen</u> analysis because the Second Amendment *does not* protect owning or possessing a firearm without training in the operation or storage of a firearm.

the Supreme Court closely examined the meaning of the prefatory phrase of the Second Amendment, including "well-regulated militia." Relevant herein, the Court stated that "well-regulated" "implies nothing more than the imposition of proper discipline and *training*." Heller, 554 U.S. at 597 (emphasis added). The Court further cited sources, including legal scholar Thomas Cooley, for the proposition that the men in a militia were to attend exercises and that the men in the militia were to be "*trained* to arms." Id. at 595-97, 617 (emphasis added). Given the plain meaning of the words of the Second Amendment, no further historical sources are necessary to support the constitutionality of the Training Requirement.

In a footnote in Bruen, the Supreme Court, when opining upon the presumptive constitutionality of the laws of "shall-issue" states, suggests the possibility of a challenge to *shall-issue* regimes where "exorbitant fees deny ordinary citizens their right to public carry." Bruen, 142 S. Ct. at 2138 n.9. Plaintiff seizes upon this footnote to contend that the Training Requirement is unconstitutional on this basis. See Plaintiff's Memo at 10-11. First, the Supreme Court appeared to be speaking of fees to process applications, not incidental fees associated with a training program. This interpretation of the "exorbitant fees" language is supported by the fact that a few sentences earlier in the very same footnote the Court endorses firearms safety courses required by "shall-issue" jurisdictions. See Bruen, 142 S. Ct. at 2138 n.9. Second, the Supreme Court did not provide a test by which to determine when a fee would be so exorbitant as to constitute a denial of the right to carry. Plaintiff likewise did not offer such a standard or cite to any case law offering a test in an analogous context. It would therefore be inappropriate to enjoin a requirement that finds support in the text of the Constitution and the prior decisions of the Supreme Court without more. Finally, Plaintiff's argument is based on a number of unsupported allegations as to (a) the total time required for Plaintiff to obtain a permit; (b) the

estimated total cost for Plaintiff to obtain a permit; (c) and the amount of money earned by a minimum wage earner in the Bronx. See Plaintiff's Complaint at 10-11; see also First Amended Complaint at ¶¶ 46-52. Given the layers of assumptions piled on by Plaintiff, the lack of supporting evidence for his "facts", and that Defendants have not had an opportunity to probe such facts, this issue cannot serve as the basis for a preliminary injunction of a State law.

For all these reasons, Plaintiff cannot demonstrate a (substantial) likelihood of success on the merits of his Second Amendment claim.

## POINT II

### PLAINTIFFS WOULD NOT SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION

The existence of irreparable harm has been called the "single most important prerequisite for the issuance of a preliminary injunction." Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 234 (1998) (internal citation omitted). While courts generally presume that the loss of constitutional rights, even for a limited period of time, constitutes irreparable harm – thereby merging the first two elements of the standard into one – such a presumption results only after a plaintiff has shown a likelihood of success on the merits. See Jolly v. Coughlin, 76 F.3d 468, 482 (1996). As discussed above, Plaintiff cannot demonstrate a likelihood of success on the merits, let alone, a substantial likelihood of success. Moreover, the alleged irreparable harm must be actual and imminent. See Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002). In this case, the harm is entirely remote and speculative. First, as detailed above, Plaintiff's application is not subject to the References Requirement or Social Media Requirement. As such, he need not provide this information, and one can hardly be harmed by a requirement that is not applicable. Second, while the Training Requirement *does* apply to Plaintiff, it is possible that he can be credited for prior training, eliminating the need to

take the sixteen hour in-person program and the two hour live-fire range training course.  Thus, any injury from the Training Requirement is purely conjectural at this point in time.  Finally, even assuming that Corbett must obtain the training described in Penal Law § 400.00(19), he fails to explain how an eighteen hour course demonstrating proficiency in the handling, storage, and use of a firearm, among other useful topics, would cause irreparable harm to him.  For all these reasons, the Plaintiff also strikes out on the second prong of the preliminary injunction standard.

## POINT III

## AN INJUNCTION IS NOT IN THE PUBLIC INTEREST

The Supreme Court's decision in <u>Bruen</u> resulted in the invalidation of a requirement that was in place for over one hundred years.  While the decision was celebrated by some, it is likely to cause angst and fear for many others.  The CCIA steps into the chasm of uncertainty created by the <u>Bruen</u> decision and addresses public safety concerns while respecting the holding and guidance of the Supreme Court.  <u>Bruen</u> confirms that municipalities are not left with "both hands tied behind their back" with respect to the grave societal harm of gun violence. The Court's decision demanded fast action, and an extraordinary session of the State Legislature was convened.  The legislative product of that session is now the operative law of the State, and municipalities, public officials, and licensing officers, along with the general public, have adapted to this new reality.  Indeed, the City of New York responded to the enactment of the CCIA by, among other things, adopting a comprehensive set of emergency rules and publishing permanent rules to replace those emergency rules.  <u>See</u> Exhibit 4 at 441-446 and Exhibit 5 at 5130-5141, respectively.

The Social Media Requirement and References Requirement both ensure that an applicant lacking "good moral character" does not obtain a license to carry a concealed firearm. With respect to the Social Media Requirement, recent history has taught a painful lesson that mass shooters often forecast their dialogical intentions in online platforms. See Peter Suciu, *Social Media Increasingly Linked With Mass Shootings*, FORBES (May 25, 2022, 12:11 p.m.), https://www.forbes.com/sites/petersuciu/2022/05/25/social-media-increasingly-linked-with-mass-shootings/?sh=7d8f778b3c73; see also Amanda Seitz, *Shooter Warning Signs Get Lost in Sea of Social Media Posts*, AP NEWS (May 27, 2022), https://apnews.com/article/uvalde-school-shooting-technology-shootings-social-media-texas-b8dc7a615765e17d46313bc83e2fe452.  Licensing officials should not be kept in the dark about obvious warning signs that could prevent the next tragedy.  As for the References Requirement, an attestation from four individuals that the applicant has not engaged in any acts or made any statements suggesting that they would use the firearm for an improper purpose eliminates any obvious red flags.  Finally, as demonstrated above, training programs similar to the one required by Penal Law § 400.00(19) have almost universal acceptance as a means to prevent tragic accidents from occurring and promote responsible gun ownership.  While the topics and specific features of training courses may differ from state to state, the fact that almost all states require demonstration of firearm proficiency is quite telling given the otherwise divisive nature of firearm regulations in our country.

Our elected officials determined that the Challenged Provisions were necessary to ensure that only those with the proper "character, temperament, and judgment" obtain a firearm, Penal Law § 400.00(1)(b), and <u>Bruen</u> provides them latitude to make that policy decision.  It is not in the public interest for this court to substitute its judgment in the absence of a constitutional

violation and upset the status quo that is now part of the licensing procedure of jurisdictions throughout the State.

## **CONCLUSION**

For all the reasons set forth herein, the court should deny Plaintiff's motion for a preliminary injunction.

Dated:     New York, New York
           October 21, 2022

                    HON. SYLVIA O. HINDS-RADIX
                    Corporation Counsel of the City of New York
                    Attorney for City Defendants
                    100 Church Street
                    New York, New York 10007
                    (212) 356-4036

                    By:                        
                          NICHOLAS R. CIAPPETTA