No. _____

---

IN THE

# Supreme Court of the United States

_____

JONATHAN CORBETT,

*Petitioner*

V.

KATHLEEN HOCHUL, *IN HER OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NEW YORK ET AL.,*

*Respondents*

_____

Petition for Writ of Certiorari to the United States Court of Appeals for the Second Circuit

_____

## PETITION FOR WRIT OF CERTIORARI

_____

JONATHAN CORBETT, ESQ.
*CORBETT RIGHTS, P.C.*
PETITIONER *(ATTORNEY PROCEEDING PRO SE)*
5551 HOLLYWOOD BLVD., SUITE 1248
LOS ANGELES, CA 90028
PHONE: (310) 684-3870
E-MAIL: JON@CORBETTRIGHTS.COM

COPY - AS FILED

## QUESTION PRESENTED

Whether footnote 9 of *NYSRPA v. Bruen*, 597 U.S. 1 (2022) , creates a presumption of constitutionality for a shall-issue licensing regime's firearms training mandate that relieves the government of its burden to justify that requirement under *Bruen*'s historical-tradition test.



## PARTIES TO THE PROCEEDING

Petitioner is Jonathan Corbett, a civil rights attorney and member of the Bar of the Court proceeding on his own behalf.

Respondents are officials of the State or City of New York, all sued in their official capacities[1]:

- Kathleen Hochul is the Governor of the State of New York,
- Letitia James is the Attorney General of the State of New York;
- Zohran Mamdani is the Mayor of the City of New York;
- Jessica S. Tisch is the Commissioner of the New York Police Department;
- Inspector Hugh Bogle is the commanding officer of the New York Police Department, Licensing Division; and
- Steven James is the Superintendent of the New York State Police.

---

[1] The State Defendants were dismissed at the district court level.

# TABLE OF CONTENTS

QUESTION PRESENTED ............................................. i

PARTIES TO THE PROCEEDING ........................... ii

TABLE OF CONTENTS ............................................. iii

TABLE OF AUTHORITIES ....................................... v

OPINIONS BELOW ................................................... 1

JURISDICTION ......................................................... 2

STATUTORY PROVISIONS INVOLVED ................. 2

STATEMENT OF THE CASE .................................... 3

I.   Factual Background ........................................ 3

II.  Prior Proceedings .......................................... 4

III. Decision Under Review ................................. 5

REASONS FOR GRANTING THE PETITION ......... 7

I.   The Courts of Appeals Are Applying Footnote
9 Under Irreconcilable Legal Standards — An
Established And Escalating Circuit Conflict ......... 7

II.  The Decision Below Misreads Bruen's
Footnote 9 as Relieving the Government of its
Burden to Historically Justify Firearms Training
Requirements ......................................................... 11

   a.   Footnote 9 Does Not Establish a Burden-
Shifting Presumption of Consti-tutionality ...... 12

   b.   The Court Should Clarify That the
Historical-Analog Test Applies to Shall-Issue
Licensing Restrictions ........................................ 17

III.  This Case is Well-Positioned to Resolve the Legal Question Presented ..................................... 18

    a.    The Preliminary Injunction Posture Sharpens Rather Than Obscures the Legal Question............................................................ 18

    b.    This Case Presents a Narrow Question That Other Cases Did Not ......................................... 19

    c.    The Non-Precedential Character of the Order Challenged Does Not Diminish the Importance of the Question Presented.............. 20

CONCLUSION...................................................... 21

Appendix A – Decision of the Court of Appeals....... 23

Appendix B – Transcript of Oral District Court Order Denying Motion •for Preliminary Injunction .......... 33

Appendix C – Statutory Provisions.......................... 39

# TABLE OF AUTHORITIES

## Cases

*Antonyuk v. James*, 120 F.4th 941 (2nd Cir. 2023).. 20

*Corbett v. Hochul*, No. 22-3210, 2023 WL 7538202
(2nd Cir., Nov. 14th, 2023) (*summary order*)............ 6

*District of Columbia v. Heller*, 554 U.S. 570 (2008).. 8

*Giambalvo v. Suffolk County*, 155 F.4th 163 (2nd Cir.
2025)..............................................................*passim*

*Hanson v. District of Columbia*, 120 F.4th 223 (D.C.
Cir. 2024) ............................................................ 10

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2nd
Cir. 2012) ............................................................ 15

*Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211
(4th Cir. 2024)....................................................... 9

*McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024) ... 10

*United States v. Rahimi*, 602 U.S. 680, 691 (2024). 17

*United States v. Villanueva* et al., 16-CR-342
(S.D.N.Y 2016) ..................................................... 15

*Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024)...... 19

*Yukutake v. Lopez*, 130 F.4th 1077 (9th Cir. 2025)
(*vacated for rehearing en banc*, 144 F.4th 1119 (9th
Cir. 2025)) ........................................................... 11

## Statutes

28 U.S.C. § 1254(1) ...................................................... 3

28 U.S.C. § 1292(a)(1) ........................................... 3, 20

28 U.S.C.. § 2101(c)...................................................... 3

N.Y. Penal Law §400.00(19) ...................................... 4

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597
U.S. 1 (2022) ...................................................*passim*

## OPINIONS BELOW

This case began in the United States District Court for the Southern District of New York as Case No. 22-CV-5867. An appeal was taken to the United States Court of Appeals for the Second Circuit on interlocutory appeal of the denial of Petitioner's motion for a preliminary injunction and assigned Case No. 22-3210. The case was remanded and, ultimately, reinstated in the Second Circuit with the same case number after the preliminary injunction was again denied on remand. The final denial of the preliminary injunction was affirmed on November 21st, 2025.

The opinion of the circuit court affirming is attached as Appendix A. A transcript of the portion of the hearing wherein the district court denied Petitioner's preliminary injunction is attached as Appendix B.

## JURISDICTION

The Court of Appeals affirmed on November 21st, 2025. Jurisdiction was proper in the Court of Appeals pursuant to 28 U.S.C. § 1292(a)(1).

This Court has jurisdiction under 28 U.S.C. § 1254(1).

## STATUTORY PROVISIONS INVOLVED

The statute and constitutional provision involved, as cited in the Table of Authorities are reproduced in Appendix C.

## STATEMENT OF THE CASE

### I.  Factual Background

Petitioner Jonathan Corbett is a licensed attorney who applied for a New York City concealed carry permit on April 14th, 2022. Appendix B, p. 36. At the time of his application, New York required applicants to demonstrate "proper cause" — a discretionary standard the Supreme Court subsequently struck down as unconstitutional in *Bruen*.

In direct response to *Bruen*, New York enacted the Concealed Carry Improvement Act ("CCIA"), effective September 1st, 2022. N.Y. Penal Law §400.00(19). As relevant here, the CCIA requires every applicant for a concealed carry permit to complete sixteen hours of in-person firearms safety instruction and a two-hour live-fire range training course. *Id*. The training requirement is mandatory; the licensing officer retains no discretion to waive it, except to credit qualifying training completed in the five years preceding September 1st, 2022. Appendix B, p. 37. While Petitioner has firearm training for an out-of-state license, it was not completed within the five year period and therefore does not qualify. Petitioner submitted an affidavit stating that he does not intend to complete New York's 18-hour course.

By its terms, the CCIA's training requirement applied to all licenses issued after September 1st, 2022, regardless of when the underlying application was filed. Appendix C. Petitioner's pending

application was therefore subject to the new requirement. As required by CCIA, on May 14th, 2024, the NYPD License Division formally disapproved Petitioner's application on the ground that he had not satisfied the training requirement.  Exhibit A, p. 33. The Notice of Disapproval stated that the License Division "has no discretion in issuing a license to an applicant who has not met" that requirement. *Id.*

## II.   Prior Proceedings

Petitioner filed this action in the Southern District of New York challenging, *inter alia*, the constitutionality of the 18-hour training requirement imposed by CCIA. After amending pleadings, the motion for a preliminary injunction relevant to this petition was filed on September 28th, 2022. A hearing was held on November 29th, 2022, at the conclusion of which, the Honorable Lorna G. Schofield denied the motion.

The district court assumed without deciding that Petitioner likely had Article III standing, applied *Bruen*'s historical-tradition framework, and concluded that the government had made a sufficient showing — through New York and New Jersey mandatory militia service laws from the founding era — that the training requirement was consistent with the Nation's historical tradition of firearm regulation and, thus, was constitutional. Appendix B, p. 39.

*- 4 -*

Petitioner timely filed an interlocutory appeal. The Second Circuit vacated and remanded, without reaching the merits, with instructions that the district court resolve the threshold standing question before addressing the constitutional issue. *Corbett v. Hochul*, No. 22-3210, 2023 WL 7538202 (2nd Cir., Nov. 14th, 2023) (*summary order*).

On remand, the district court held that Petitioner had standing to challenge the training requirement as to the City Defendants — confirmed by the May 2024 formal denial of his application — but dismissed the State Defendants for lack of traceability. Appendix A, pp. 33, 34. With that question resolved, the court below declined to modify its prior holding that the training requirement did not offend the Second Amendment and, thus, refused to enter a preliminary injunction. *Corbett v. Hochul*, No. 22-CV-05867 (LGS), 2024 WL 3553132 (S.D.N.Y., July 26, 2024). Corbett requested that the appeal be reinstated, and the Second Circuit obliged. Appendix A, p. 29.

### III.   Decision Under Review

With the core issue now squarely presented, the court held the reinstated appeal in abeyance pending its decision in *Giambalvo v. Suffolk County*, 155 F.4th 163 (2nd Cir. 2025). It then applied Giambalvo and, based on that circuit precedent, affirmed. Appendix A, p. 29.

Turning to the familiar four-part balancing test, the court set the stage by elevating the first prong to require a "clear or substantial likelihood of success," a standard applicable when a preliminary injunction would affect government action taken pursuant to a statutory scheme.  Appendix A, p. 31.  Next, the appeals court declined to engage in a historical-tradition analysis of the 18-hour training mandate. Instead, it invoked *Giambalvo*'s holding that "the Supreme Court has included firearm training requirements as part of presumptively constitutional shall-issue licensing regimes." Appendix A, p. 32 (*quoting Giambalvo*, 155 F.4th at 181). *Giambalvo* drew that presumption from footnote 9 of *Bruen*, which it read as establishing that such regimes "are not constitutionally suspect." *Id.* (*quoting Bruen*, 597 U.S. at 38, fn. 9).

Having established that presumption, the court placed the burden on Petitioner to make "at least some showing to overcome" the "presumptive constitutionality" as part of his burden of demonstrating a likelihood of success on the merits. Appendix A, p. 32 (*quoting Giambalvo*, 155 F.4th at 181). Petitioner's argument — that there is no historical analogue to training requirements for firearms licenses — was deemed insufficient, because *Bruen*'s footnote 9 "supports, rather than undermines, the constitutionality of the CCIA firearms-training requirement."  Appendix A, p. 33.  The court accordingly found no abuse of discretion.  *Id.*

## REASONS FOR GRANTING THE PETITION

I.   *The Courts of Appeals Are Applying Footnote 9 Under Irreconcilable Legal Standards — An Established and Escalating Circuit Conflict*

Now the fourth year after Bruen was decided, six circuits have assessed whether — and how — footnote 9's brief discussion of shall-issue licensing regimes affects constitutional challenges to the specific requirements those regimes impose. All of them have reached the same outcome: the challenged requirement was upheld. But no two circuits have followed the same path to get there. What has emerged is not a coherent post-*Bruen* doctrine but a patchwork of incompatible methodologies, each drawing on the same footnote for different purposes, applying different burdens, and producing frameworks that cannot be reconciled with one another — or with *Bruen* itself. The conflict is not narrowing. It is calcifying.

The disagreement is most acute between the Second and Fourth Circuits. In *Giambalvo*, the court below held that *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *Bruen* together establish training requirements as components of "presumptively constitutional shall-issue licensing regimes," such that a challenger "must make at least some showing to overcome this presumptive constitutionality" before the government is required to do anything at all. *Id.*

at 181. No historical-tradition analysis was required of the government; the presumption alone disposed of the claim, and the decision under review applied that presumption identically. *Id.* Under this framework, the Second Amendment's protection is effectively suspended for training mandate challenges unless the challenger can affirmatively rebut a presumption the Constitution does not authorize.

The Fourth Circuit *en banc* majority reached the same result through a categorically different mechanism. In *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211 (4th Cir. 2024), the court held that footnote 9 resolves the threshold *Bruen* question of whether a shall-issue regime "infringes" the constitutional right at all. Under the Fourth Circuit's approach, licensing requirements in shall-issue regimes do not implicate *Bruen*'s historical-tradition test unless the challenger first demonstrates that the regime effectively denies ordinary citizens the right to carry — what the court characterized as operating in an "abusive" fashion. *Id.* at 222, 223. Judges Richardson and Niemeyer dissented, arguing that the majority had "elevate[d] implications from dicta over [*Bruen*'s] mandatory text-and-history test." *Id.* at 241 (Richardson, J., *dissenting*).

These two approaches differ not merely in degree but in kind. The Second Circuit creates a presumption of constitutionality that the challenger must rebut. The Fourth Circuit removes licensing requirements from *Bruen*'s framework at the threshold, treating

them as categorically non-infringing absent a preliminary showing of abuse. A plaintiff in the Second Circuit faces a burden of rebuttal; a plaintiff in the Fourth Circuit faces demonstrating abusive intent. Neither burden appears anywhere in *Bruen*'s text, nor do these two burdens even overlap each other.

The other circuits have added further methodological variation. The Fifth Circuit in *McRorey v. Garland*, 99 F.4th 831 (5th Cir. 2024), which by circuit precedent treats *dicta* from this Court as binding, upheld a background check requirement by nature of it being a "common-place regulation[]," a scintilla of historical engagement that still exceeds that conducted by the Second and Fourth Circuits. The Tenth Circuit in *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96 (10th Cir. 2024), compounded this doctrinal instability by grafting footnote 9's shall-issue discussion onto *Heller*'s separate statement that "conditions and qualifications on the commercial sale of arms" are "presumptively lawful," *Heller*, at 626-27, thereby constructing a broader presumption from two sources of *dicta* the Court never connected to each other or intended to operate in tandem. The D.C. Circuit in *Hanson v. District of Columbia*, 120 F.4th 223 (D.C. Cir. 2024), applied footnote 9 more modestly as general confirmation that licensing requirements are consistent with the Second Amendment, making some resort to history without developing the analytical architecture the other circuits have erected.

And the Ninth Circuit produced the most fractured result of all in *Yukutake v. Lopez*, 130 F.4th 1077 (9th Cir. 2025) (*vacated for rehearing en banc*, 144 F.4th 1119 (9th Cir. 2025)) where a divided panel imported First Amendment prior restraint doctrine as the governing constitutional test while a concurrence rejected that approach entirely and argued that the "abusiveness" inquiry must be conducted through *Bruen*'s historical-tradition analysis. No majority methodology emerged.

Respondents may argue that this conflict does not require resolution because every circuit has upheld the challenged requirement. That argument proves too much — and on examination, the unanimous result is far less reassuring than it first appears. Constitutional methodology is not a technicality and the allocation of the burden of proof itself implicates a constitutional right. A Second Amendment claimant in the Second Circuit must affirmatively overcome a presumption of constitutionality before the government is required to justify its regulation at all. A claimant in the Fifth Circuit faces a government that must at least gesture toward historical support. These are not equivalent constitutional positions, and the differences will prove outcome-determinative in harder cases — a fifty-hour training mandate, a $25,000 licensing fee, a year-long processing delay, *etc.*, and there should be no doubt that, should the Court allow the pressing of the boundaries, jurisdictions that would prefer a *may-issue* regime but

for Bruen will adopt more and more onerous requirements for the purpose of reducing the number of licensees.

More fundamentally, the uniform result of upholding training requirements has been achieved without any circuit ever requiring the government to actually justify a training mandate on the merits. Not one court has compelled the government to produce historical evidence specifically supporting the proposition that training prerequisites for firearm licensure are consistent with the Nation's historical tradition of firearm regulation. Every circuit has instead found some mechanism — a presumption, a threshold non-infringement determination, a borrowed First Amendment test — to avoid that inquiry entirely. Constitutional validity has been assumed rather than established. The Court should not wait for a circuit to strike down a training requirement before clarifying the framework. That structural absence is not one that time and continued litigation will self-correct. It is one that only this Court can supply.

## II. *The Decision Below Misreads Bruen's Footnote 9 as Relieving the Government of its Burden to Historically Justify Firearms Training Requirements*

*Bruen* established a framework of deliberate clarity. "When the Second Amendment's plain text

covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24.

The burden is the government's, the test is historical, and no carve-out is created for licensing requirements. Notwithstanding, the decision below replaced this framework with one of its own invention, reading footnote 9 as establishing a presumption of constitutionality that inverts *Bruen*'s burden allocation and exempts training mandates from historical scrutiny altogether. That reading is incorrect, and it is incorrect in ways that matter.

> a. <u>Footnote 9 Does Not Establish a Burden-Shifting Presumption of Constitutionality</u>

*Bruen*'s footnote 9 assures readers that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Bruen*, 597 U.S. at 38, fn.9. These regimes, the Court observed, are designed to ensure that those bearing arms are "law-abiding, responsible citizens," and they typically require applicants to undergo a "background check or pass a firearms safety course" and satisfy "narrow, objective, and definite standards." *Id.* The Second Circuit read this passage as establishing that training requirements are presumptively constitutional, shifting to challengers

the burden of rebutting that presumption. That reading is doubly wrong — wrong about what the footnote says, and wrong about what it could legally authorize.

Begin with the text. Footnote 9 is framed in the negative: it says *Bruen*'s analysis does not "suggest the unconstitutionality" of shall-issue regimes. A court that declines to condemn is not thereby declaring valid, and footnote 9 is properly read to clarify certain issues *are not decided* by the case, not that certain issues *have been decided and are exempt from scrutiny*. There is no reasonable reading of footnote 9 in which its intent is to add or subtract from the rest of the *Bruen* decision; it is only a clarification of scope. (It even starts with the words, "To be clear…")

Keeping in mind that in order for something to offer clarity, there must be something that is brought into focus. It is, thus, telling that those reading Bruen to allow an exemption to the historical analog test for some or all licensing requirements have not been able to point to words in the body of *Bruen* that could possibly, with the help of a lens provided by footnote 9, support that exemption. Indeed, the *Giambalvo* court seems to have no problem understanding that the body of *Bruen* does the opposite. *Giambalvo* at 176 (2nd Cir. 2025). ("Under Bruen, the Supreme Court articulated a two-step framework to evaluate Second Amendment challenges. First, we must ask whether the Second Amendment's plain text covers an

*- 13 -*

individual's conduct … If the individual's conduct is covered, then the Constitution **presumptively protects that conduct and the government must then justify its regulation** by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.") (*cleaned up, emphasis added*).

The intent of the footnote is best read as distinguishing may-issue regimes, which *Bruen* categorically disallows, from shall-issue regimes, which *Bruen* does not categorically prohibit. The mention of a "firearms safety course" in footnote 9 is to illustrate a requirement that would qualify as shall-issue because licensing officers will not be free to make individualized determinations[1] as to whether one is adequately trained; that is: if you complete the training course, you satisfy the requirement without

---

[1] These individualized decisions are precisely what *Bruen* sought to outlaw. In addition to it being constitutionally offensive to condition a right upon convincing a law enforcement officer that you have a good reason to exercise it, it is no secret that for decades, the New York Police Department (which makes licensing decisions within the city) used this discretion to engage in corruption while denying the ordinary citizen the right to bear arms. *See, e.g., United States v. Villanueva* et al., 16-CR-342 (S.D.N.Y 2016). The Second Circuit has consistently refused to take even a cursory peek behind the curtain, *see, e.g., Kachalsky v. County of Westchester*, 701 F.3d 81 (2nd Cir. 2012), just as it refused to analyze the training requirements here unless and until Petitioner rebuts a non-existent presumption.

regard to any official "discretion." It would be wrong to read footnote 9 even as saying that reasonable safety courses are permissible.  It is simply saying that safety courses fit in the "shall-issue" bucket, not the "may-issue" bucket.  The footnote thus makes no comment on the constitutional validity, in either direction, of any shall-issue licensing requirement.

The footnote's reference to a state's legitimate interest in ensuring gun licensees are "law-abiding, responsible citizens" reinforces this reading rather than counseling against it.  The longstanding prohibition on non-law-abiding citizens owning guns does not offer much assistance here, as "no felons" requirements are extraordinarily well-rooted in history, but what work does the word "responsible" do?  While analyzing the precise contours of "responsible" could fill an entire brief, we can be certain that whatever it adds, its reach cannot grasp New York's training requirement without casting those who own firearms without first completing 18-hour training courses as "irresponsible." This is so because, given that the New York requirement is (or is nearly) the most stringent in the country, holding otherwise would cast the overwhelming majority of gun owners in the country as irresponsible – *including nearly every person in New York State issued a license before CCIA came into effect in 2022.*

To the extent that some pre-licensure training may constitutionally be required post-*Bruen,* it is clear that some determination must be made as to whether

a specific requirement is reasonably necessary to ensure that irresponsible individuals do not obtain weapons.  And, this is fully compatible with Bruen's historical-analog test: a requirement cannot be reasonably necessary without pointing to a historical analog because something that has never been done in the past is clearly not "necessary."[2]  Regardless, even if the Court were inclined to create a *sui generis*, relaxed test for certain shall-issue licensing requirements, there is not a shred of support for the proposition that it would place the burden of meeting that test upon the challenger.

*Bruen*'s allocation of the burden is not a procedural nicety that a footnote can "clarify away." The Court was unambiguous: "*the government* must affirmatively prove that its firearms regulation is part of the historical tradition." *Bruen* at 19 (*emphasis added*). In *United States v. Rahimi*, 602 U.S. 680, 691 (2024), the Court reaffirmed this placement of the burden without qualification. Eight lines of *dicta* in a footnote that even goes so far as to explicitly state that its

---

[2] Surely, those advocating for stricter gun control would argue, "times have changed, weapons are more powerful, and mass shootings are more frequent, so now it's necessary."  But this is why *Bruen* requires only a "representative historical *analogue*, not a historical *twin*." *Bruen* at 30 (*emphasis in original*). This flexibility allows regulations to evolve as society, technology, and crime do, without allowing whole-cloth restrictions designed to erode, rather than regulate, our Second Amendment rights.

purpose is clarification, as opposed to creating an exception, cannot override a clear holding announced in the same opinion and reaffirmed in the next.

At minimum, this Court could correct the threshold error by clarifying that the burden of justification of laws that burden the Second Amendment rights of the people rests upon the government without regard to whether the burden is imposed at licensing or at another juncture. The Court could reverse and remand for the district court to assess in the first instance whether that burden can be satisfied — without necessarily resolving today the precise scope of what the government's showing must consist of — and that limited clarification alone would restore *Bruen*'s framework across six circuits currently applying incompatible standards, and would for the first time require governments to actually justify training prerequisites rather than resting on a presumption the Constitution does not authorize.

> b. The Court Should Clarify That the Historical-Analog Test Applies to Shall-Issue Licensing Restrictions

If the Court wishes to go a step further and specify not just *who* bears the burden but *what* that burden is, it may avoid a question that will certainly arise in the immediate future. This is so because the recent circuit opinions discussed *supra* make clear that regardless of who bears the burden, they view footnote 9 as establishing a parallel constitutional framework

for shall-issue licensing requirements so long as they contain "narrow, objective, and definite standards."

This is a more defensible position than a flat no-scrutiny or shifted-burden scrutiny position, but it is still not the best reading *Bruen* and would not create a workable framework.  Failure of a law to be narrow, objective, or definite is an excellent way to determine if a law is *unconstitutional*, as lack of these characteristics means that a law is *vague*.  But, a law being sufficiently specific does not necessarily serve to insulate it from constitutional review, and in some cases may also work against the law by making it more vulnerable to an equal protection attack.

### III.   *This Case is Well-Positioned to Resolve the Legal Question Presented*

a. The Preliminary Injunction Posture Sharpens Rather Than Obscures the Legal Question

The decision below arose from the denial of a preliminary injunction, and Respondents may argue the Court should await a final merits judgment. That argument cannot survive scrutiny. First, the Court does not categorically disfavor the preliminary injunction posture in this doctrinal context. *See*, *e.g.*, *Wolford v. Lopez*, 116 F.4th 959 (9th Cir. 2024) (*cert. granted Oct. 3rd, 2025*). Second, the preliminary injunction inquiry here required the same constitutional analysis as a final merits determination as a result of the "likelihood of success"

portion of the applicable balancing test. There is no factual development that could sharpen the issue because the court below's placement of the burden upon the wrong party means that any further factual development would lead us towards an answer to the wrong question.

b. This Case Presents a Narrow Question That Other Cases Did Not

This Court denied certiorari in both *Antonyuk v. James*, 120 F.4th 941 (2nd Cir. 2023) (cert. denied, Apr. 7th, 2025), which presented a sprawling challenge to numerous CCIA provisions simultaneously, and *Maryland Shall Issue* (cert. denied Jan. 13th, 2025), which presented the Fourth Circuit's footnote 9 methodology in the context of a home-storage licensing requirement. Neither petition isolated and presented the specific question whether footnote 9 creates a presumption of constitutionality for training mandates as a component of a shall-issue regime. This case does.

The Court did grant certiorari in *Wolford*, which challenges a restriction on *where* a law-abiding citizen may carry firearms, and *Wolford* cites *Giambalvo* in the merits briefing. *Wolford*, Brief of Petitioners, pp. 42, 44. *Wolford* may yield guidance on *Bruen*'s analytical framework generally, but it will be resolved under *Bruen*'s sensitive-places analysis and therefore cannot resolve the specific question whether footnote 9 creates a presumption of constitutionality that shifts

the constitutional burden to the challenger of a pre-license firearms training requirement.

The parties in *Giambalvo* appear not to have petitioned the Court for *certiorari.*, eliminating a possible vehicle for the Court's review of the "presumption of constitutionality." This case, however, squarely argued below that *the government* must justify the training requirement under *Bruen*'s historical-tradition framework, and that footnote 9 provides no basis for displacing that obligation. And, the Second Circuit more squarely rejected that argument here with even more force and clarity than it did in *Giambalvo.* This case therefore presents the question in its cleanest form – whether the presumption exists and whether the government may rely upon it to avoid its constitutional burden entirely – without any procedural or factual distractions.

### c. The Non-Precedential Character of the Order Challenged Does Not Diminish the Importance of the Question Presented

Respondents may argue that a non-precedential summary order is an unsuitable vehicle for this Court's review. There is no such rule. More to the point, the practical significance of the decision below is not diminished by its procedural form. *Giambalvo* — which is fully precedential and binding in the Second Circuit — established the legal standard the court applied here. *Every* training mandate challenge

in the Second Circuit will now be decided under *Giambalvo*'s presumption, and it would be predictable that such challenges would be disposed of with summary orders too.

The time for Giambalvo to petition for certiorari having lapsed, it is likely not only acceptable, but necessary, to accept an appeal of a summary order if the court wishes to review the "presumption of constitutionality" holding.   The alternative would allow important constitutional holdings to escape review so long as: (1) *certiorari* is not granted in case that created the precedent (whether because it was not sought or was denied), and (2) the circuit thereafter only issues summary orders to enforce that precedent.

## CONCLUSION

Six circuits are applying footnote 9 of *Bruen* under irreconcilable legal standards, and not one has required the government to historically justify the training mandates it imposes. The decision below compounds that failure by converting a descriptive footnote into a presumption of constitutionality that the Constitution does not authorize — relieving the government of the very burden *Bruen* deliberately placed upon it and that *Rahimi* reaffirmed. That error is structural, self-perpetuating, and immune to correction by any court below.

This case presents the question cleanly, on a fully developed record, with the core legal issue squarely

*- 21 -*

decided and preserved. The Court should grant this petition for *certiorari*, reverse the decision below, and restore the framework this Court established in *Bruen*.

Respectfully,

_____

Jonathan Corbett, Esq.
CORBETT RIGHTS, P.C.
*Attorney Appearing* Pro Se
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX: (310) 675-7080
E-mail: jon@corbettrights.com

## Appendix A – Decision of the Court of Appeals

JONATHAN CORBETT, Plaintiff-Appellant,

v.

KATHLEEN HOCHUL, in her official capacity as chief executive of the State of New York; LETITIA JAMES, in her official capacity as Attorney General of the State of New York; ERIC L. ADAMS, in his official capacity as Mayor of the City of New York; JESSICA S. TISCH, in her official capacity as Commissioner of the New York Police Department; INSPECTOR HUGH BOGLE, in his official capacity as Commanding Officer of the New York Police Department, Licensing Division; STEVEN JAMES, in his official capacity as Superintendent of the New York State Police,[1] Defendants-Appellees.

No. 22-3210-cv

United States Court of Appeals, Second Circuit

November 21, 2025

UNPUBLISHED OPINION

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER

IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of November, two thousand twenty-five.

Appeal from a November 29, 2022, order of the United States District Court for the Southern District of New York (Schofield, J.).

FOR    PLAINTIFF-APPELLANT:    JONATHAN CORBETT, Corbett Rights, P.C., Los Angeles, CA.

FOR    DEFENDANTS-APPELLEES:    ELINA DRUKER (Richard Dearing, Claude S. Platton, on the brief), for Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

PHILIP J. LEVITZ, Assistant Solicitor General, (Barbara D. Underwood, Solicitor General; Judith N. Vale, Deputy Solicitor General; on the brief), for Letitia James, Attorney General of the State of New York, Albany, NY.

PRESENT: JOSE A. CABRANES, SARAH A. L. MERRIAM, Circuit Judges, JENNIFER L. ROCHON, District Judge. [*]

**UPON DUE CONSIDERATION,** the order of the District Court is **AFFIRMED**.

Plaintiff-appellant Jonathan Corbett appeals from the District Court's November 29, 2022, order denying his motion for a preliminary injunction. Corbett seeks to enjoin the enforcement of New York State's firearms-training requirement for the issuance or renewal of a concealed-carry license, pursuant to the Concealed Carry Improvement Act ("CCIA"). *See* N.Y. Penal Law §400.00(19). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

*BACKGROUND*

In 2022, while his application for a permit to own and carry a concealed weapon was pending before the New York Police Department Licensing Division, New York enacted the CCIA. In response, Corbett initiated this action against several New York State and New York City officials (the "State" and "City" defendants, respectively), alleging that the CCIA firearms-training requirement[2] "unnecessarily, intentionally, and unreasonably restricts his ability" to "keep and bear arms" in violation of the Second Amendment.[3] Joint App'x at 11. Corbett sought a preliminary

injunction barring enforcement of the firearms-training requirement.

On November 29, 2022, the District Court denied the motion for a preliminary injunction, first assuming without deciding that Corbett had standing to challenge the firearms-training requirement, but then concluding that he had not carried his burden of showing that he was likely to succeed on the merits of his claim that the firearms-training requirement is unconstitutional. Corbett appealed. This Court vacated the District Court's order and remanded, pursuant to *United States v. Jacobson*, 15 F.3d 19, 21-22 (2d Cir. 1994), for the District Court to conduct the threshold standing analysis.[4] *See Corbett v. Hochul*, No. 22-3210-cv, 2023 WL 7538202, at *2 (2d Cir. Nov. 14, 2023) (summary order). On remand, the District Court concluded that Corbett has standing to challenge the firearms-training requirement against the City defendants, but not against the State defendants. *See Corbett v. Hochul*, No. 1:22CV05867(LGS), 2024 WL 3553132, at *1 (S.D.N.Y. July 26, 2024). The District Court's prior order denying the preliminary injunction was unaffected by the standing decision. *See id.* at *4.

Following the standing decision, we reinstated Corbett's appeal of the merits of the preliminary-injunction motion but held it in abeyance pending this Court's decision in *Giambalvo v. Suffolk County*, which was issued on September 12, 2025. *See Giambalvo v. Suffolk Cnty.*, 155 F.4th 163 (2d Cir.

2025). At the Court's request, the parties submitted supplemental letter briefs addressing the effect of *Giambalvo* and the Supreme Court's opinion in *United States v. Rahimi*, 602 U.S. 680 (2024), on the issues raised in this appeal.

### DISCUSSION

We first address the threshold issue of standing. We agree with the District Court's thorough and well-reasoned analysis of this issue, and we conclude, as the District Court did, that Corbett has standing to challenge the training requirement as against the City defendants, but not against the State defendants.[5] *See Corbett*, 2024 WL 3553132, at \*2-4. We therefore proceed to the merits.

"We review the denial of a motion for a preliminary injunction for abuse of discretion, which we will identify only if the decision rests on an error of law or a clearly erroneous finding of fact, or cannot be located within the range of permissible decisions." *Giambalvo*, 155 F.4th at 174 (citation modified).

A preliminary injunction is an extraordinary remedy never awarded as of right. Ordinarily, a plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. However, when, as here, the preliminary injunction will affect government action

taken in the public interest pursuant to a statutory or regulatory scheme, it should be granted only if the moving party meets the more rigorous likelihood-of-success standard. That is, [the plaintiff] must establish a clear or substantial likelihood of success on the merits.

*Id.* (citation modified).

Corbett contends that the District Court abused its discretion in concluding that he is not likely to succeed on the merits of his facial Second Amendment challenge to the constitutionality of the CCIA firearms-training requirement. Applying *Giambalvo*, we disagree. "The Second Amendment, made applicable to the states through the Fourteenth Amendment, provides: 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *Giambalvo*, 155 F.4th at 176 (quoting U.S. Const. amend. II). In *National Rifle &Pistol Association v. Bruen*, 591 U.S. 1 (2022), the Supreme Court "articulated a two-step framework to evaluate Second Amendment challenges. First, we must ask whether the Second Amendment's plain text covers an individual's conduct." *Giambalvo*, 155 F.4th at 176 (citation modified). If it does, "then the Constitution presumptively protects that conduct, and the government must then justify its regulation by demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation." *Id.* (citation modified).

In *Giambalvo*, this Court affirmed the denial of a motion seeking to enjoin the enforcement of several CCIA licensing requirements, including the same firearms training requirement that Corbett challenges here. *See id.* at 170-71. Specifically, we held that the "the CCIA's 18-hour firearms training requirement is likely constitutional." *Id.* at 181. We explained that, in both *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *Bruen*, "the Supreme Court has included firearm training requirements as part of presumptively constitutional shall-issue licensing regimes." *Id.* As a result, a plaintiff "seeking to preliminarily enjoin the enforcement of a firearms training requirement must make at least *some* showing to overcome this presumptive constitutionality as part of their burden of establishing a clear or substantial likelihood of success on the merits." *Id.* (citation modified) (emphasis in original). Moreover, a facial challenge "requires a [party] to establish that no set of circumstances exists under which the [challenged provision] would be valid." *Rahimi*, 602 U.S. at 693 (citation modified).

In *Giambalvo*, we concluded that the plaintiffs had "fail[ed] to make any argument to persuasively rebut the presumptive validity of the CCIA's 18-hour firearms training requirement." *Giambalvo*, 155 F.4th at 181.[6] Corbett fares no better. Corbett makes only one substantive argument: that there is no historical analog to training requirements for firearms licenses,

and therefore the firearms-training requirement does not pass muster under the *Bruen* framework. But as we explained in *Giambalvo*, "in *Bruen*, the Supreme Court went out of its way to clarify that 'nothing in [its] analysis should be interpreted to suggest the unconstitutionality of the 43 States' "shall-issue" licensing regimes,'" and that such regimes "are not constitutionally suspect." *Id.* (quoting *Bruen*, 597 U.S. at 13 n.9). *Bruen* therefore supports, rather than undermines, the constitutionality of the CCIA firearms-training requirement. Accordingly, Corbett has failed to show a substantial likelihood of success on the merits, and we find no abuse of discretion in the District Court's order denying the preliminary injunction.

We have considered Corbett's remaining arguments and find them to be without merit. For the foregoing reasons, the order of the District Court is **AFFIRMED**.

---------

Notes:

[*] Judge Jennifer L. Rochon of the United States District Court for the Southern District of New York, sitting by designation.

[1] The Clerk of Court is directed to amend the caption of the case to substitute Jessica S. Tisch for Keechant Sewell as Commissioner of the New York Police Department and Steven James for Steven A.

Nigrelli as the Superintendent of the New York State Police pursuant to Federal Rule of Appellate Procedure 43(c)(2).

[2] The firearms-training requirement provides that, as a prerequisite to obtaining a license, "an applicant shall complete an in-person live firearms safety course conducted by a duly authorized instructor," including "a minimum of sixteen hours of in-person live curriculum" and "a minimum of two hours of a live-fire range training course." N.Y. Penal Law §400.00(19).

[3] While Corbett initially contested the constitutionality of additional CCIA requirements, the District Court concluded that Corbett lacked standing to challenge them. On appeal, Corbett does not dispute the District Court's conclusion as to those requirements; we therefore deem those claims abandoned. See Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir. 2004) ("It is well established that an argument not raised on appeal is deemed abandoned and lost.").

[4] On May 14, 2024, while this matter was on remand, the New York Police Department Licensing Division denied Corbett's application for a concealed carry permit. See Corbett v. Hochul, No. 1:22CV05867(LGS), 2024 WL 3553132, at *2 (S.D.N.Y. July 26, 2024).

[5] Corbett does not contest the District Court's conclusion that he lacks standing as against the State

defendants; he has therefore abandoned any challenge to that conclusion. *See Shakur*, 391 F.3d at 119.

[6] The Giambalvo plaintiffs argued that the firearms-training requirement was facially unconstitutional because the 18-hour training courses were too costly; we found that argument insufficient to rebut the presumptive constitutionality of the requirement "because at least some of the training courses being offered are not so prohibitively expensive so as to rise to a Second Amendment violation." *Giambalvo*, 155 F.4th at 182.

## Appendix B – Transcription of Oral District Court Order Denying Motion for Preliminary Injunction

THE COURT: Okay. I am prepared to rule, in that case. Let me begin with the legal standard, which I know was a matter that the parties disputed.

I'm quoting now: "A party seeking to stay government action taken in the public interest pursuant to a statutory or regulatory scheme must establish (1) a likelihood of success on the merits, and (2) irreparable harm in the absence of an injunction." Evergreen Association, Inc. v. City of New York, 740 F.3d 233 at 245, Second Circuit 2014; accord Citizens United v. Schneiderman, 115 F. Supp 3d 457 at 462, S.D.N.Y. 2015. "A presumption of irreparable injury flows from a violation of Constitutional rights." We The Patriots USA Inc. V. Hochul 17 F.4th 266 at 294, Second Circuit 2021. I know that this is a less demanding standard than at least what I believe the City advocated for, but I'm not sure that the mandatory injunction standard has been applied in this context. And the quotation that I read from Evergreen is explicitly addressed to a party seeking to stay government action taken pursuant to a statutory or regulatory scheme. So for the purpose of my analysis here, I'm adopting the less demanding standard, meaning less demanding standard imposed on the plaintiff seeking relief.

So in terms of my analysis, just to cut to the chase, I'm denying the request for preliminary injunction.

With respect to the social media and reference requirements, plaintiff has not established a likelihood of success on the matters, and, specifically, that is on the standing issue. In order to have standing to sue, a litigant must have suffered an injury in fact Spokeo, Inc. v. Robins, 578 U.S. 330 at 338, 2016. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized in actual imminent, not conjectural or hypothetical." Id. at 339, accord TransUnion, LLC. v. Ramirez, 141 Supreme Court 2190 at 2200, and the year is 2021. "A concrete injury must be de facto; that is, it must actually exist; it must be real, and not abstract." Spokeo, 578 U.S. at 340.

As I understand from our oral argument, I think Mr. Corbett is realistic about this argument and understands the impediment that the requirement of imminence imposes. Here, I find, for the purposes of this motion, that the plaintiff lacks standing to challenge the social media and reference requirements because he applied for his license in April 2022, and the two requirements we're talking about did not apply to applications that were made before September 1, 2022. So by the terms of the statute, those requirements don't apply to plaintiff, so he cannot show injury in fact from these requirements.

Plaintiff looks to the future and argues that these requirements would apply to any renewal application.

I'm not persuaded by this argument. First, any renewal application is at least three years away, and that is not actual or imminent. Second, any renewal application is hypothetical because there is not yet any license to renew. So for that reason, I find that plaintiff has not established a likelihood of success on the two challenges, the social media requirement and the references requirement, because he lacks standing.

Let me turn then to the training requirement. I conclude that the plaintiff has not shown a likelihood of success on the merits of this challenge. I'm assuming without deciding that he is likely to be able to show that he has standing to challenge the training requirement. "In order to challenge the New York firearm licensing laws, a person must either have applied for and been denied a license or make a showing that his or her application would have been futile." Libertarian Party of Erie County v. Cuomo, 970 F.3d 106 at 116, Second Circuit 2020, abrogated by Bruen on other grounds.

Plaintiff here has filed an application and the training requirement by its terms applies to his application. He has not taken the required training. He states that he has no intention of taking the required training and he hasn't had any training in the last five years. Nothing in the statute suggests that the training requirement can be waived or that it's discretionary. And so on these facts, it seems likely that the plaintiff can show that his application is futile

and likely to be denied. It is sufficient to establish injury in fact and, therefore, standing.

Onto the merits of the training requirement, the plaintiff has not shown a likelihood of success in showing that the requirement is unconstitutional. "The Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." New York State Rifle and Pistol Association, Inc, v. Bruen, 2111 at 2125, and the year is 2022.

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 2129 and 30.

"This historical inquiry will often involve reasoning by analogy." Id. at 2132. "Analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." Id. at 2133. "Whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry. Id."

So as a threshold matter, I find, for the purposes of this motion, that the Second Amendment's plain text covers the conduct in question, that is to own and carry a handgun in public. However, plaintiff has

- 36 -

failed to show a likelihood of success on the merits. Defendants ultimately have the burden of proof on this issue. And here, they have made a sufficient showing without any contrary evidence from plaintiff that the training requirement is consistent with the Nation's historical tradition of firearm regulation.

The State defendants attach and quote a New York law called an Act for Regulating the Militia of the State of New York, passed in 1780, which shows that the belonging to a militia was something that was required basically of every able-bodied man between the ages of 16 and 44, and that was the State militia. And those men were required to be enrolled and to bear arms and at least four times a year——by the way, I think it's four and not six——be "called out to be well and sufficiently exercised trained and disciplined for their instruction and improvement." That is at Docket 16-8 at page 3.

State defendants also provided a similar New Jersey law which states, "That the militia, on the days of exercise, may be detained under arms on duty in the field any time not exceeding six hours." Based on these sources and evidence in the record, the training requirement appears to be consistent with, and even more lenient than, the training requirements of the 18th and 19th centuries. Although the plaintiff disputes that the militia is an appropriate analogue, it is in that context that the Second Amendment was adopted and, in that context, that men were expected and did carry arms. The plaintiff identifies several

ways in which the training requirement is different from its historical analogue. As I said, I think that argument is unpersuasive because defendants, as Bruen says, need not identify an historical twin. Plaintiff also argues that the training requirement is unconstitutional because of exorbitant fees and also an argument about excessive time, but the plaintiff has not offered any evidence of what the fees actually will be. And the New York State militia statute makes clear that individuals were required to soldier significant costs in connection with their bearing arms. So it seems to me there's ample historical precedent not only for the training requirement but imposing costs in connection with the bearing of arms and licensure on the applicants.

So for these reasons, because the plaintiff has not established a likelihood of success on the merits of challenging the training requirement, I am denying the motion for preliminary injunction.

## Appendix C – Statutory Provisions

U.S. CONST., Amend. II

A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

N.Y. Penal Law, § 400.00(19)

Prior to the issuance or renewal of a license under paragraph (f) of subdivision two of this section, issued or renewed on or after the effective date of this subdivision, an applicant shall complete an in-person live firearms safety course conducted by a duly authorized instructor with curriculum approved by the division of criminal justice services and the superintendent of state police, and meeting the following requirements: (a) a minimum of sixteen ours of in-person live curriculum approved by the division of criminal justice services and the superintendent of state police, conducted by a duly authorized instructor approved by the division of criminal justice services, and shall include but not be limited to the following topics: (i) general firearm safety; (ii) safe storage requirements and general secure storage best practices; (iii) state and federal gun laws; (iv) situational awareness; (v) conflict de-escalation; (vi) best practices when

COPY - AS FILED

encountering law enforcement; (vii) the statutorily defined sensitive places in subdivision two of section 265.01-e of this chapter and the restrictions on possession on restricted places under section 265.01-d of this chapter; (viii) conflict management; (ix) use of deadly force; (x) suicide prevention; and (xi) the basic principles of marksmanship; and (b) a minimum of two hours of a live-fire range training course. The applicant shall be required to demonstrate proficiency by scoring a minimum of eighty percent correct answers on a written test for the curriculum under paragraph (a) of this subdivision and the proficiency level determined by the rules and regulations promulgated by the division of criminal justice services and the superintendent of state police for the live-fire range training under paragraph (b) of this subdivision. Upon demonstration of such proficiency, a certificate of completion shall be issued to such applicant in the applicant's name and endorsed and affirmed under the penalties of perjury by such duly authorized instructor. An applicant required to complete the training required herein prior to renewal of a license issued prior to the effective date of this subdivision shall only be required to complete such training for the first renewal of such license after such effective date.